## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Veniamin Y. Kolosov, | : | CASES CONSOLIDATED |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | Nos. 1324 C.D. 2021, 1325 C.D. 2021 |
| Bureau of Driver Licensing | : | Submitted: August 12, 2022 |


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                    FILED:  November 30, 2022


Veniamin Y. Kolosov (Licensee) appeals from the November 1, 2021 orders of the Court of Common Pleas of Centre County (trial court) that dismissed Licensee's statutory appeals[1] from a 12-month driver's license suspension and a 12-month commercial driving privilege disqualification[2] imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver

---

[1] This matter involves appeals from two lower court docket numbers, a 12-month driver's license suspension docketed at CP-49-CV-983-2021 and a 12-month commercial driving privilege disqualification docketed at CP-49-CV-984-2021.  As both the license suspension and the commercial driving privilege disqualification arose from the same set of facts, this Court consolidated the matters by order dated March 24, 2022, and exited March 25, 2022.

[2] 75 Pa. C.S. § 1613 (relating to implied consent requirements for commercial motor vehicle drivers).

Licensing (DOT), pursuant to what is commonly known as the Vehicle Code's Implied Consent Law, 75 Pa. C.S. § 1547(b) (Implied Consent Law), as a result of Licensee's refusal to submit to chemical testing upon his arrest for driving under the influence of alcohol or a controlled substance (DUI).[3] Upon review, we affirm.

At approximately 4:00 a.m. on February 18, 2021, Pennsylvania State Police Trooper Cody Doran was on patrol and returning to the police barracks when he pulled into a large, snow-covered parking lot in Benner Township, Centre County. *See* Notes of Testimony 10/29/2021 (N.T.) at 6-8 & 16-17; Reproduced Record (R.R.) at 10a-12a & 20a-21a. The parking lot was approximately 30 yards wide with trucks parked on either side and a drivable area in the middle. *See* N.T. at 16-17; R.R. at 20a-21a. In this parking lot, Trooper Doran observed a large black Ford pickup truck performing donuts in the snow. *See* N.T. at 7 & 16-17; R.R. at 11a & 20a-21a. Trooper Doran viewed this as an unsafe activity as he felt the truck could possibly hit one of the parked trucks. *See* N.T. at 18; R.R. at 22a.

Trooper Doran pulled his patrol vehicle up to the Ford pickup, which had parked in a parking stall. *See* N.T. at 8 & 18; R.R. at 12a & 22a. As Trooper Doran approached, Licensee got out of the driver's side of the Ford pickup. *See* N.T. at 8; R.R. at 12a. Trooper Doran asked Licensee to come over to the driver's side of the patrol vehicle so that he could have a word with Licensee about the donuts, and Licensee complied. *See* N.T. at 8 & 18; R.R. at 12a & 22a. Upon Licensee's approach, Trooper Doran immediately observed that his eyes were glassy and bloodshot and that his speech was slurred. *See* N.T. at 8; R.R. at 12a. Trooper Doran exited the vehicle and asked Licensee whether he had been drinking. *See id.* Licensee denied drinking. *See id.* However, while speaking to Licensee, Trooper

---

[3] 75 Pa. C.S. § 3802.

Doran could smell a strong odor of alcohol emanating from Licensee's breath. *See id.* Trooper Doran made these observations while standing two feet from Licensee. *See* N.T. at 19; R.R. at 23a.

Based on his observations, Trooper Doran requested that Licensee participate in certain field sobriety tests. *See* N.T. at 8; R.R. at 12a. Licensee agreed and exhibited signs of intoxication during the field testing.[4] *See id.* Trooper Doran also attempted to administer a preliminary breath test (PBT) to Licensee, but Licensee would not provide an adequate breath sample for the PBT machine to properly register a reading. *See* N.T. at 10; R.R. at 14a.

Following the field sobriety testing and failed PBT, based on his experience and training, Trooper Doran concluded that Licensee was under the influence of alcohol. *See* N.T. at 11; R.R. at 15a. He placed Licensee under arrest for DUI, requested that Licensee submit to a blood draw, and transported Licensee to a local hospital. *See* N.T. at 11-12; R.R. at 15a-16a. Once at the hospital, Trooper Doran read Licensee the warnings contained in the DOT's Form DL-26B Chemical Testing Warnings[5] in their entirety. *See* N.T. at 12-13; R.R. at 16a-17a. After

---

[4] Trooper Doran conducted three field sobriety tests: the horizontal gaze nystagmus test, during which Licensee exhibited six signs of intoxication; the walk-and-turn test, during which Licensee exhibited one indicator of intoxication; and the one-leg stand test, during which Licensee exhibited no signs of intoxication. *See* N.T. at 9-10; R.R. at 13a-14a.

[5] The DL-26B Form's blood testing warnings read as follows:

It is my duty to as a police officer to inform you of the following:

1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.

2. I am requesting that you submit to a chemical test of blood.

3

Trooper Doran read the warnings, Licensee confirmed that he understood the warnings and verbally refused to submit to testing. *See* N.T. at 13-14; R.R. at 17a-18a.

Thereafter, DOT notified Licensee that, as a result of his refusal to submit to chemical testing, his driving privilege would be suspended and his commercial driving privilege disqualified for a period of 12 months. Licensee appealed both the suspension and the disqualification. The trial court conducted a hearing on October 29, 2021, and dismissed the appeals by order dated November 1, 2021.[6] Licensee timely appealed to this Court.

---

3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months. If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

The parties stipulated to the contents of the DL-26B Form and that Licensee was fully appraised of his rights. *See* N.T. at 13; R.R. at 17a. The DL-26B Forms were entered into evidence without objection before the trial court as part of two separate evidence packets – one evidence packet pertaining to the license suspension case and a second evidence packet pertaining to the commercial driver's license disqualification case. *See* N.T. at 15; R.R. at 19a.

[6] The trial court orally dismissed the appeals on the record at the end of the October 29, 2021 hearing. *See* N.T. at 22; R.R. at 26a. The trial court signed written orders denying Licensee's statutory appeals on October 29, 2021, but those orders were not filed until November 1, 2021. *See* R.R. at 29a-30a.

Licensee raises one claim on appeal before this Court:[7] that the trial court erred by determining that Trooper Doran had reasonable grounds to request that Licensee submit to chemical testing. *See* Licensee's Brief at 2 & 5-8. Licensee argues that Trooper Doran's observations of the operation of Licensee's vehicle, Licensee's glassy/bloodshot eyes and slurred speech, and Licensee's performance during the field sobriety tests were insufficient evidence of intoxication to allow Trooper Doran to request that Licensee submit to chemical testing. *See id.* at 5-8. Licensee is not entitled to relief.

Initially, we note:

> To sustain a license suspension under [the Implied Consent Law], DOT has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once DOT meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

*Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013) (quoting *Wright v. Dep't of Transp., Bureau of Driver Licensing*, 788 A.2d 443, 445 (Pa. Cmwlth. 2001)). In the instant matter, no dispute exists as to three of these elements: Trooper Doran requested that Licensee submit to chemical testing, Trooper Doran warned Licensee – through the reading of the DL-

---

[7] "Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion." *Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017).

5

26B Form – that his refusal to submit to chemical testing would result in a license suspension, and Licensee clearly refused to submit to the requested testing. Licensee challenges only the trial court's determination that Trooper Doran had reasonable grounds to believe that Licensee was driving while under the influence of alcohol at the time he arrested Licensee for DUI.

"The question of whether an officer had reasonable grounds to arrest a licensee is a question of law fully reviewable by this court on a case-by-case basis." *Yencha v. Dep't of Transp., Bureau of Driver Licensing*, 187 A.3d 1038, 1044 (Pa. Cmwlth. 2018). In assessing whether DOT has met its burden of proving reasonable grounds to believe that a licensee drove while intoxicated, this Court considers the totality of the circumstances to determine, as a matter of law, whether a person in the position of the arresting officer could have reasonably reached this conclusion. *See Yencha*, 187 A.3d at 1044. As this Court has explained,

> [a]n officer has reasonable grounds to believe an individual was operating a motor vehicle under the influence of alcohol if a reasonable person in the position of the police officer, viewing the facts and circumstances as they appeared to the officer at the time, could conclude that the driver drove his car while under the influence of alcohol. The test for determining if reasonable grounds exist is not very demanding. An officer may acquire reasonable grounds to believe that a licensee was driving under the influence of alcohol *at any time* during the course of interaction between the officer and the licensee.

*Kachurak v. Dep't of Transp., Bureau of Driver Licensing*, 913 A.2d 982, 985 (Pa. Cmwlth. 2006) (internal citations and quotation marks omitted) (emphasis in original); *see also Yencha*, 187 A.3d at 1044. Further,

6

> [t]he standard of reasonable grounds to support a license suspension does not rise to the level of probable cause required for a criminal prosecution. A driver's guilt or innocence of a criminal offense is not at issue in the license suspension proceedings. It is axiomatic that the legality of a driver's underlying DUI arrest is irrelevant for purposes of a license suspension proceeding for refusal to submit to chemical testing.

*Kachurak*, 913 A.2d at 985-86 (internal citations omitted); *see also Yencha*, 187 A.3d at 1044 ("The test for whether a police officer has reasonable grounds to believe that a licensee drove while intoxicated is not demanding; it requires even less proof than what is necessary to establish probable cause for a criminal prosecution."). Moreover,

> [a]n arresting officer need not prove that he was correct in his belief that the licensee was operating the vehicle while under the influence. Even if later evidence proves the officer's belief to be erroneous, this will not render the reasonable grounds void. Further, an officer need not witness the licensee operating a vehicle to place him under arrest for driving under the influence. Additionally, an officer's reasonable belief that the licensee was driving while under the influence will justify a request to submit to chemical testing if one reasonable interpretation of the circumstances as they appeared at the time supports the officer's belief. Further, courts appropriately defer to an investigating officer's experience and observations where reasonable grounds exist to support the officer's belief based on the totality of the circumstances.

*Yencha*, 187 A.3d at 1044-45 (internal quotation marks citations omitted); *see also Dep't of Transp., Bureau of Traffic Safety v. Dreisbach*, 363 A.2d 870, 872 (Pa. Cmwlth. 1976) ("The only valid inquiry on this issue at the *de novo* hearing is whether, viewing the facts and circumstances as they appeared at the time, a

reasonable person in the position of the police officer could have concluded that the motorist was operating the vehicle and under the influence of intoxicating liquor." (footnote omitted)). Thus, "[a]t trial, the only relevant factual defense would be a showing that the motorist's behavior was not, in fact, as the officer testified. It would then be for the trial court to resolve issues of credibility." *Dreisbach*, 363 A.2d at 872.

Here, Trooper Doran testified that he observed what he considered to be unsafe driving and so stopped his vehicle to discuss the matter with Licensee. Upon approaching Licensee, Trooper Doran immediately observed signs of intoxication, to wit: glassy and bloodshot eyes, slurred speech, and a strong odor of alcohol on the breath. Trooper Doran then conducted multiple field sobriety tests, some of which yielded indicators of intoxication in Licensee. Additionally, Trooper Doran testified that Licensee failed to provide an adequate breath sample for the PBT. As the trial court noted, "[i]t was the[se] observations[], along with his training and experience, that [led] Trooper Doran to believe [Licensee] was intoxicated and incapable of safe driving." Trial Court 1925(a) Opinion dated March 2, 2022 (Trial Court Opinion) at 3; R.R. at 34a. Based on these observations by Trooper Doran, the trial court concluded as follows:

> The [trial c]ourt believes the unsafe driving, bloodshot eyes, slurred speech, indicators on certain of the field sobriety tests, uncooperative conduct with respect to the breathalyzer, and strong odor of alcohol, viewed in totality, provided reasonable grounds for Trooper Doran to believe [Licensee] was operating his truck while under the influence.

Trial Court Opinion at 3-4; R.R. at 34a-35a.

8

We agree with the trial court. Trooper Doran's observations, as described above, provided reasonable grounds for Trooper Doran to believe that Licensee was operating his vehicle under the influence of alcohol and to arrest Licensee based on that suspicion. *See Yencha*; *Kachurak*; *Dreisbach*. Licensee's arrest for suspected DUI then warranted Trooper Doran's request that Licensee submit to chemical testing pursuant to the Implied Consent Law, which request Trooper Doran accordingly made and Licensee refused, despite having been warned of the consequences of such a refusal. *See* 75 Pa. C.S. § 1547(b). Accordingly, DOT met each element of its burden of proving its case, and the trial court appropriately denied Licensee's statutory appeals.

For these reasons, we find no error in the trial court's dismissal of Licensee's statutory appeals challenging his driver's license suspension and commercial driver's license disqualification. Accordingly, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Veniamin Y. Kolosov, : CASES CONSOLIDATED
                   Appellant :
                            :
         v. :
                            :
Commonwealth of Pennsylvania, :
Department of Transportation, : Nos. 1324 C.D. 2021, 1325 C.D. 2021
Bureau of Driver Licensing :

O R D E R

AND NOW, this 30th day of November, 2022, the November 1, 2021 orders of the Court of Common Pleas of Centre County are AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge